UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JAVIER PEREZ,                                   :

                        Petitioner pro se,      :        09 Civ. 2180 (WHP)

                                                :        MEMORANDUM & ORDER

            -against-                           :

ROBERT ERCOLE,                                  :

                        Respondent.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED: 2|4|11           │
└─────────────────────────────┘
```

WILLIAM H. PAULEY III, District Judge:

            Petitioner pro se Javier Perez ("Perez") seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254 challenging his conviction for first degree assault, following the entry of a

guilty plea in New York State Supreme Court.  On June 22, 2010, Magistrate Judge Fox issued a

report and recommendation recommending that this Court deny Perez's petition.  On November

16, 2010, Perez filed objections to the Report.  For the following reasons, this Court concludes

that Perez's objections are without merit and adopts Magistrate Judge Fox's thorough and well-

reasoned Report in full.

## BACKGROUND

            On November 30, 2001, Perez drove to an apartment building with Salathiel

Duarte ("Duarte"), Rafael Rios ("Rios"), and Raymond Mundo ("Mundo").  (Report and

Recommendation of Magistrate Judge Kevin N. Fox dated June 22, 2010 ("Report") at 2.)  Perez

waited outside as a lookout while Rios and Mundo entered the apartment building.  (Report at 2.)

Perez believed that Rios and Mundo intended to commit a burglary.  However, once inside the

-1-

building, they fatally stabbed two people.  (Report at 2.)

On December 11, 2003, Perez drove with his wife to attend a meeting with his probation officer.  (Report at 2.)  The probation officer led Perez into a room where three police officers were seated.  (Report at 2.)  The police officers asked Perez to accompany them to the 23rd precinct, and Perez agreed.  (Report at 2.)  One of the officers later testified that had Perez refused, he would have been arrested.  (Report at 2.)  Perez gave his car keys to his wife, who was told that she could accompany him to the station, and two of the officers drove him in an unmarked car.  (Report at 3.)

At the station, he was escorted to an unguarded interview room where he sat, unhandcuffed, for approximately five to ten minutes.  (Report at 3.)  Thereafter, an officer entered the room and, without a <u>Miranda</u> warning, told Perez: "I'm going to show you some photographs."  (Report at 3.)  The officer removed photographs of Duarte, Mundo, and Rios from a folder and placed them on the table in front of Perez.  (Report at 3.)  Unprompted, Perez stated, "[O]h yeah, I know those people."  (Report at 3.)

The officers then read Perez his <u>Miranda</u> rights.  On questioning, Perez then admitted his role in the murders.  (Report at 3.)  He was subsequently charged with first-degree murder, second-degree murder, and felony murder.  (Report at 4.)  On August 9, 2004, the New York State Supreme Court denied Perez's motion to suppress his statements to law enforcement agents on December 11, 2003.  On January 25, 2005, Perez pled guilty to first-degree assault and was sentenced to twenty-three years in prison.  (Report at 1.)

DISCUSSION

I. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). This Court reviews de novo those parts of the Report to which objections are made and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, "[a] petition for habeas corpus cannot be granted unless the state court's ruling 'resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Eisemann v. Herbert, 401 F.3d 102, 110 (2d Cir. 2005) (quoting 28 U.S.C § 2254).

II. Miranda

The Fifth Amendment, which applies to the states by way of the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 6 (1964), provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "In Miranda v. Arizona, the [Supreme] Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." Maryland v. Shatzer, 130 S. Ct. 1213, 1219 (2010) (citation omitted) (citing Miranda v. Arizona, 384 U.S. 436, 467 (1966). "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

-3-

deprived of his freedom of action in any significant way." Yarborough v. Alvarado, 541 U.S. 652, 661 (2004) (quoting Miranda, 684 U.S. at 444)).

    A. Custody

        Although the circumstances determining custody will vary with each case, "the ultimate inquiry is simply whether there is a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest." Yarborough, 541 U.S. at 662 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). Custody "must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances." Yarborough, 541 U.S. at 662. Thus, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Yarborough, 541 U.S. at 663 (quoting Stansbury v. California, 511 U.S. 318, 323 (1994)).

        Perez points to several factors that he asserts create "custody": he was never told that he was not under arrest; he was transported in the back seat of a locked police car; the three police officers "surprised" him with their presence at his probation meeting; the encounter was initiated by the police officers, not by Perez; he relinquished control of his car keys to his wife, thereby limiting his freedom of movement; and the alleged interrogation took place in an interrogation room at a police station. These factors are indeed relevant and weigh in favor of finding "custody." However, they are not dispositive, and ultimately are insufficient.

        The mere existence of a "coercive environment" does not require the administration of Miranda warnings. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Indeed, "any interview of one suspected of a crime by a police officer will have coercive aspects

to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime" Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Here, despite the inherently coercive law enforcement environment, Perez was not placed under arrest, nor was he subject to restraint of freedom of movement comparable to a formal arrest. "Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" Beheler, 463 U.S. at 1125 (quoting Mathiason, 429 U.S. at 495). Perez was not handcuffed, nor was he placed in a guarded room or told that he was not free to leave. Although he rode in the back seat of a police car en route to the station, he did so voluntarily, and he was not interrogated during the ride. See Beheler, 463 U.S. at 1122 (holding that suspect was not in custody where, inter alia, he "voluntarily agreed to accompany police to the station house"). Moreover, the mere fact that contact was initiated by law enforcement officers, rather than the suspect, does not render that suspect "in custody." See Mathiason, 429 U.S. at 495. And although Perez surrendered possession of his car keys, he gave them to his wife, not to a police officer, and his wife was permitted to accompany him to the precinct. Accordingly, his ability to transport himself from the station was not significantly restricted.

Perez also argues that the officers intended to elicit the incriminating information out of him and that the entire encounter was "meticulously planned" to create this result. However, it is well settled that an officer's subjective views are irrelevant in determining whether a person is in "custody" under Miranda. Stansbury, 511 U.S. at 323; accord Berkemer v. McCarty, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time.").

-5-

B. Interrogation

Although the fact that Perez was not in custody ends the inquiry, this Court also notes that Perez was not "interrogated" prior to receiving his Miranda warnings. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). This includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. However, "[a]ny statement given freely and voluntarily without any compelling influences is . . . admissible." Arizona v. Mauro, 481 U.S. 520, 529 (1987) (quoting Miranda, 384 U.S. at 478). "In deciding whether particular police conduct is interrogation, [a Court] must remember the purpose [of Miranda]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." Mauro, 481 U.S. at 529-30. Where a suspect is not subject to "compelling influences, psychological ploys, or direct questioning . . . [,] volunteered statements cannot properly be considered the result of police interrogation." Mauro, 481 U.S. at 429.

Here, Perez was not asked any direct questions. Showing him a photograph is neither a "compelling influence" nor a "psychological ploy" designed to illicit an incriminating response. Rather, when Perez viewed the photographs, he freely volunteered that he knew the men depicted in them. Moreover, Perez's admission, "oh yeah, I know those people," reveals nothing about his role in the crime and is not incriminating "in any meaningful sense of the word." Miranda, 384 U.S. at 477. Accordingly, Perez was not "interrogated" within the meaning of Miranda.

This Court has reviewed the remainder of the Report, finds it is not facially erroneous, and affirms and adopts it.

## CONCLUSION

For the foregoing reasons, this Court adopts the report and recommendation of Magistrate Judge Kevin N. Fox in its entirety. Perez's petition for a writ of habeas corpus is denied. Because Perez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate all motions pending as of this date and mark the case closed.

Dated: February 4, 2011
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

-7-

*Copy mailed to:*

Hon. Kevin N. Fox

Javier Perez
# 05-A-1201
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821
*Petitioner pro se*

*Counsel of Record*

Lea La Ferlita
Office of the Attorney General
120 Broadway
New York, NY 10271
*Counsel for Defendant*